UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

RUSSELL MEYERS,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,
JOHN DOE #1, JOHN DOE #2 –
OWNER OF BANK OF AMERICA
ACCOUNT ENDING IN '332.
_____/

## COMPLAINT

Plaintiff, **RUSSELL MEYERS** ("**Plaintiff**"), by and through undersigned counsel, sues **BANK OF AMERICA, N.A.** ("**Bank of America**"), **JOHN DOE #1 ("John Doe 1")**, and **JOHN DOE #2** – the Owner of Bank of America Account Number Ending in '332 ("**John Doe 2**")(Bank of America together with John Doe 1 and John Doe 2 "**Defendants**"), and alleges:

## NATURE OF THE ACTION

1. This case involves the acts and omission of Defendants in connection with a fraudulent enterprise. Plaintiff seeks damages arising out of Defendants' negligence, fraud and conversion resulting in the loss of funds from Plaintiff's Bank of America account.

## PARTIES, JURISDICTION, AND VENUE

2. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorney's fees.

3. At all times relevant, Plaintiff was an account holder at Bank of America residing in the Southern District of Florida.

4. Defendant Bank of America is a national banking institution incorporated in North Carolina and engaged in business throughout the State of Florida, including the Southern District of Florida.

5. To the extent Plaintiff's Complaint names the unknown John Doe 1 and John Doe 2 as Defendants in this action, the citizenship of these parties should be disregarded for the purpose of determining diversity jurisdiction.

6. John Doe 1 is, upon information and belief, an individual at all times relevant hereto, whose name, residence and citizenship is unknown to Plaintiff, but is known to Bank of America inasmuch as this individual was at all times relevant, employed by Bank of America and an active participant in the events alleged in this Complaint.

7. John Doe 2 is and at all times relevant hereto was the holder of an account at Bank of America ending in 332 and an active participant in the events alleged in this Complaint; the identity, residence, and citizenship of John Doe 2, although currently unknown to Plaintiff, is known to Bank of America.

8. Bank of America, John Doe 1 and John Doe 2 are each subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193, having committed a tortious act or acts giving rise to the claims asserted within the Southern District of Florida.

9. Venue is proper in this district as Plaintiff resides in the Southern District of Florida and the cause of action arose in the Southern District of Florida.

**GENERAL ALLEGATIONS**

10. Over twenty years ago, Plaintiff established a bank account at Fleet Bank. In 2004, Fleet Bank merged with Bank of America, and Plaintiff's bank account became part of Bank of America. ("BOA account").

11. Because of this longstanding relationship, Bank of America has been or should have been well-versed and knowledgeable of Plaintiff's banking practices at Bank of America and use of his BOA account.

12. Prior to the incident described in this complaint involving a wire transfer for $88,835.00, Plaintiff never sent a wire transfer for any amount over $15,000.00 over the course of more than twenty years.

13. On December 23, 2022 Bank of America notified Plaintiff in writing that it detected fraud on Plaintiff's BOA account. Shortly thereafter, Plaintiff was notified by a Bank of America representative (John Doe 1), that the fraud had been intercepted before the funds left Plaintiff's BOA account, but that Plaintiff's account had been compromised.

14. As a result, the Bank of America representative John Doe 1, informed Plaintiff that the account must be closed and a new account opened at Bank of America. Until a new account was opened, the Bank of America representative John Doe 1 informed Plaintiff that the BOA account would be frozen.

15. Given the intervening holiday weekend, the Bank of America representative John Doe 1 scheduled an appointment with Plaintiff for December 27, 2022 to initiate the closing process of one account and transition to new account.

16. On December 27, 2022, at the agreed upon time, the Bank of America representative John Doe 1 contacted Plaintiff and provided directions to complete the transition from Plaintiff's BOA account to a new account at Bank of America, in two separate transfers.

17. In accordance with the instructions provided by the Bank of America representative John Doe 1, $88,835.50 was transferred from the BOA account to a holding account at Bank of America.

18. Following completion of the transfer, the Bank of America representative John Doe 1 provided a telephone number to call Bank of America to confirm that the wire transfer was completed. Plaintiff contacted the Bank of America number and spoke with a Bank of America representative who confirmed that the transfer was complete. The phone number provided can also be found online as a recognized number for Bank of America.

19. This process was repeated on January 5, 2023 with the remainder of the funds in the Bank of America account in the amount of $87,000.00. However, this time the transfer did not go through and Plaintiff received an email from eComm Fraud Detection stating that their monitoring systems detected an online transaction in the amount of $87,000.00 and to contact an 888 number provided in the email. The email did not refer to Bank of America.

20. When Plaintiff called Bank of America regarding the eComm Fraud Detection email that he received, Plaintiff was informed that fraud had occurred and Plaintiff's Bank of America account had been compromised.

21. Uncertain of the legitimacy of the eComm Fraud Detection email or the Bank of America representative who stated that fraud had occurred, Plaintiff immediately drove to a Bank of America branch location and spoke to a bank teller. The bank teller directed Plaintiff to the Branch manager who instructed Plaintiff to take a seat and wait until someone is available to meet with Plaintiff.

22. After waiting 20 minutes, Plaintiff met with a bank branch employee ("branch employee") in his office, during which time, the branch employee represented that he placed a recall of the December 27, 2022 wire.

23. However, the branch employee did not appear to follow any protocol and had difficulty contacting anyone at Bank of America with knowledge of the process to recall a wire.

24. During Plaintiff's two hours at the Bank of America branch, it was apparent that no system existed to address the loss of funds, recall the wire or take any affirmative action on Plaintiff's behalf to recover the missing funds.

25. One of the many Bank of America representatives who spoke with the branch employee and Plaintiff by phone reported that Bank of America communicated with Plaintiff four times on December 27, 2022, which could not have occurred unless someone other than Plaintiff communicated with Bank of America, without Plaintiff's knowledge or authorization.

26. Plaintiff explained what occurred to numerous bank representatives that the branch employee called during the two hours that Plaintiff was at the branch, each time repeating the events from the beginning. It was apparent that Bank of America did not have any security procedure in place to address the recall or recovery of Plaintiff's funds.

27. In addition to the branch employee, the bank manager and assistant manager both spoke to Plaintiff, but neither provided any assistance or took any action to recover the missing funds.

28. After two hours of meeting with bank employees and other individuals at the branch, a Bank of America representative who the branch employee contacted by phone, abruptly informed Plaintiff that Bank of America could not help Plaintiff, and could not initiate a recall of the wire or file a claim, having no proof that the funds in the account belonged to Plaintiff. Instead, Plaintiff was referred to an online claim form.

29. When Plaintiff requested further information regarding the alleged four communications with Plaintiff on December 27, 2022, the Bank of America representative did not answer and ended the call.

30. The two hours at the bank branch was merely Bank of America's collection of information from Plaintiff in order to prepare a defense to its own negligence, including but not

limited to its release of the December 27, 2022 wire based on purported communications that it had with unknown parties.

31.  As instructed, Plaintiff immediately filed a claim for the return of Plaintiff's funds in the amount of $88,835.50.

32.  Several months later, on May 8, 2023, Plaintiff received an email from Check.Fraud.and.Digital.Claims@bofa, instructing Plaintiff to click a link in the email to read a secure message from Bank of America.

33.  The message informed Plaintiff that Bank of America was unable to recover the funds and that Plaintiff's claim was denied.

34.  To date, Bank of America has refused to return Plaintiff's funds.

35.  All conditions precedent to the initiation of the action have occurred, been satisfied, or have been waived.

**COUNT I – NEGLIGENCE**
**(Against Bank of America)**

36.  Plaintiff hereby incorporates and realleges paragraphs 1 through 35 as if fully set forth herein.

37.  As a Bank of America account holder, Plaintiff has a direct relationship with Bank of America.

38.  Bank of America owed a duty to Plaintiff, as its customer, to provide a commercially reasonable method of providing security against unauthorized payment orders.

39.  Bank of America breached its duty to Plaintiff by failing to maintain a commercially reasonable method of providing security against unauthorized payment orders.

40.  Bank of America further breached its duty to Plaintiff by failing to mark, note, or otherwise flag suspicious activity when wire transfer requests were received initiating payment

to random entities even though Plaintiff had never sent any wire transfers or done business with the entity to whom the funds were transferred.

41. Bank of America further breached its duty to Plaintiff by failing to follow through with promises made to Plaintiff by Defendant's agent at the bank branch that he would recall the wire.

42. Bank of America further breached its duty to Plaintiff by failing to properly and promptly investigate the matter.

43. Bank of America was on notice of the fraud at the time that it occurred, but ignored its own security procedures, in breach of its duty to Plaintiff.

44. Bank of America failed to timely initiate and complete reasonable error resolution investigations.

45. As a result of Bank of America's omissions, Plaintiff has been damaged.

46. Bank of America, through its agents at the local branch and in communications with Bank of America representatives, had a duty to Plaintiff to act with due care to address Plaintiff's requests and concerns.

47. Bank of America breached that duty as set forth above by failing to initiate a recall or reversal at a time when the funds could be recovered, as represented by Bank of America branch employees, or otherwise taking any reasonable action to assist Plaintiff in recovering the lost funds.

48. As a direct and proximate result of Bank of America's breach of its duty to Plaintiff, Plaintiff has incurred damages of the unrecovered sum of $88,850.00.

WHEREFORE, Plaintiff demands judgment in its favor, including pre-judgment interest, costs, and for such other and further relief that this Court deems just and proper.

### COUNT II – NON-COMPLIANCE WITH SECURITY

**PROCEDURES IN VIOLATION OF FLA. STAT. 670.202(2)**
**(Against Bank of America)**

49. Plaintiff hereby incorporates and realleges paragraphs 1 though 35 as if fully set forth herein.

50. Bank of America is a bank engaged in the business of banking as defined in § 670.105(l)(b), Florida Statutes.

51. Plaintiff has an account with Bank of America and is a customer of Bank of America as defined in § 670.105(1)(c), Florida Statutes.

52. Bank of America failed to comply with the security procedures, as required by §670.202(2), Florida Statutes, when it failed to act properly in terminating the funds transfer totaling $88,850.00 when it received notice on December 27, 2022 that the subject transfer violated security procedures.

53. Plaintiff was harmed as a result of Bank of America's failure to comply with the security procedures.

54. The harm Plaintiff has incurred includes loss of the sum of $88,850.00 plus interest.

55. Plaintiff is entitled to recovery and refund from Bank of America of the payment order in the amount of $88,850.00, with interest pursuant to §670.204, Florida Statutes.

WHEREFORE, Plaintiff demands judgment in its favor, including the award of damages, interest, costs, and for such other and further relief as this Court deems just and proper.

**COUNT III – FRAUD**
**(Against John Doe 1)**

56. Plaintiff hereby incorporates and realleges paragraphs 1 through 35 as if fully set forth herein.

57. At all times relevant, John Doe 1 represented to Plaintiff that he was a representative of Bank of America.

58. John Doe 1 made false representations to Plaintiff that his BOA account had been compromised in order to deceive Plaintiff into moving funds from his BOA account to a new account at Bank of America.

59. John Doe 1 made the false representations with the intent that Plaintiff act upon it.

60. Plaintiff's reliance upon the false representation was reasonable.

61. Plaintiff suffered damages in the amount of $88,850.00 proximately caused by John Doe 1's false representation to Plaintiff.

WHEREFORE, Plaintiff demands judgment in its favor, including pre-judgment interest, costs, and for such other and further relief that this Court deems just and proper.

### COUNT IV – FRAUD
**(Against John Doe 2)**

62. Plaintiff hereby incorporates and realleges paragraphs 1 through 35 as if fully set forth herein.

63. At all times relevant, John Doe 2 maintained an account at Bank of America for the purpose of committing fraud.

64. Working in coordination with John Doe 1, John Doe 2 provided substantial assistance to John Doe 1 to carry out the fraudulent enterprise resulting in the removal of Plaintiff's funds from his BOA account and into John Doe 2's Bank of America account ending in 332.

65. John Doe 2 actions were the proximate cause of damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment in its favor, including pre-judgment interest, costs, and for such other and further relief that this Court deems just and proper.

## COUNT V - COMMON LAW CONVERSION
### (Against All Defendants)

66. Plaintiff hereby incorporates and rellages paragraphs 1 through 35 as if fully set forth herein.

67. The acts of John Doe 1, John Doe 2, and Bank of America constitute common law conversion.

68. John Doe 1 (an employee of Bank of America) with the complicity of John Doe 2 Bank of America account holder, engaged in a distinct act of dominion over the funds in Plaintiff's BOA account in the amount of $88,850.00.

69. John Doe 1's actions facilitated and caused the movement of funds from Plaintiff's BOA account to John Doe 2's Bank of America account.

70. John Doe 2 assumed and exercised control over the funds that were improperly transferred to its Bank of America account.

71. Until John Doe 2 came into possession of Plaintiff's Funds, Plaintiff was the lawful owner and was entitled to immediate possession.

72. John Doe 1 and John Doe 2 wrongfully converted Plaintiff's Funds for his own use.

73. At all times material, Bank of America had the ability to stop the wrongful conversion of Plaintiff's BOA account to John Doe 2's Bank of America account.

74. Instead Bank of America was complicit, took no action to protect Plaintiff's BOA account resulting in the wrongful conversion of Plaintiff's funds in the amount of $88,850.00.

**WHEREFORE**, Plaintiff demands judgment in its favor, including pre-judgment interest, costs, and for such other and further relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts so triable.

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**

By: */s/ Alan J. Kluger*
Alan Kluger, Esq.
Florida Bar No. 200379
akluger@klugerkaplan.com
Terri Ellen Tuchman Meyers, Esq.
Florida Bar No. 881279
tmeyers@klugerkaplan.com
Citigroup Center, 27th Floor
201 S. Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 379-9000